UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ROBERT J. HANFLING, CHAPTER 11 TRUSTEE FOR ATG, INC. AND CATALYTICS LLC**<br><br>Plaintiff,<br><br>v.<br><br>**EPSTEIN BECKER & GREEN, P.C. JOHN PRESTON, CHRISTOPHER NAGEL, EUGENE BERMAN, ETHAN JACKS, QUANTUM CATALYTICS LLC, ABC CORPS 1 through 5 and JOHN DOES 1 through 5,**<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>C.A. No. 05-10077-RGS |

**MODIFIED MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS QUANTUM CATALYTICS, LLC, JOHN
PRESTON, AND CHRISTOPHER NAGEL'S MOTION TO DISMISS**

Defendants Quantum Catalytics LLC ("Quantum"), John Preston and Christopher Nagel (collectively, the "Quantum Defendants"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move this Court to dismiss the Complaint in the above-referenced civil action with prejudice for failure to state a claim upon which relief can be granted. The Quantum Defendants also respectfully move this Court to dismiss the claims asserted against them because those claims are barred by the applicable statute of limitations.

PROCEDURAL BACKGROUND

The Quantum Defendants timely filed a Motion To Dismiss Or In The Alternative To Abstain with the United States Bankruptcy Court for the Northern District of California on March 22, 2004. Pursuant to the Bankruptcy Court Local Rule 7003-1(b), Plaintiff's

opposition was not due until fourteen days prior to oral argument on such motion. However, before the Bankruptcy Court scheduled a hearing, defendant Epstein Becker & Green, P.C. ("EBG") filed a motion to withdraw the bankruptcy court's reference and the case was referred to the United States District Court for the Northern District of California. On July 19, 2004, the Northern District of California court granted EBG's motion to withdraw the reference. EBG then filed a motion to transfer venue to the District Court of Massachusetts. Subsequently, the remaining defendants filed motions to withdraw the bankruptcy court's reference and joined in EBG's motion to transfer venue.

In November 2004, the United States District Court for the Northern District of California granted the motion to withdraw the reference as to the remaining defendants and transferred venue to this Court. Plaintiff has not yet responded to the Quantum Defendants' Motion to Dismiss nor has the Court ruled on it. Therefore, the Quantum Defendants now renew their Motion to Dismiss and re-submit their memorandum in support thereof with the following modifications: (1) the addition of supplemental citations to relevant First Circuit authority, including the substitution of some citations to Ninth Circuit and United States District Court for the Northern District of California opinions with opinions from the First Circuit and District Court of Massachusetts; (2) deletion of the argument regarding abstention; (3) deletion of references to bankruptcy rules to the extent they are no longer applicable; and (4) some other modifications.

<u>PRELIMINARY STATEMENT</u>

On December 3, 2001, ATG, Inc. filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Almost two years later, on December 2, 2003, Robert I. Hanfling ("Plaintiff"), Chapter 11 Trustee For ATG, Inc. and ATG Catalytics L.L.C.

(collectively "ATG"), initiated this ill-founded adversary proceeding by filing a complaint (the "Complaint" or "Compl.") against the Quantum Defendants, and various "ABC Corporations" and "John Does," among others.  Plaintiff contends that the Quantum Defendants made misrepresentations in conjunction with ATG's and Quantum's purchase of certain catalytic extraction processing ("CEP") assets (i.e., a process that reduces the volume and stabilizes low level nuclear waste) from the bankruptcy estate of Molten Metal Technology, Inc. and its affiliated subsidiaries ("MMT").

This lawsuit, which centers on unspecified alleged misrepresentations purportedly made by unidentified defendants, is dead on arrival and should be dismissed with prejudice. Although taking almost two years to investigate and file the present action, Plaintiff can do no better than assert a litany of vague and conclusory allegations based on nothing more than conjecture.  Under Rule 9(b) of the Federal Rules of Civil Procedure, however, in order to assert a claim for fraud or negligent misrepresentation, Plaintiff must allege facts <u>with particularity</u> to plead a cause of action adequately.  Specifically, Plaintiff must specify "the time, place and content of the alleged false or fraudulent representations." <u>Powers v. Boston Cooper Corp.</u>, 926 F.2d 109, 111 (1st Cir. 1991).  Here, Plaintiff has failed to do so.

In addition, the claims asserted against the Quantum Defendants fail to state a claim upon which relief can be granted.  As Plaintiff acknowledges, the Quantum Defendants resigned from MMT in advance of the MMT bankruptcy.  Therefore, the Quantum Defendants had almost no connection with MMT for at least a year prior to the purchase of CEP assets by ATG Catalytics.  During this period, it was the MMT Trustee who controlled the CEP assets. Therefore, beside the fact that the Quantum Defendants could not have made a knowing misrepresentation because they were not privy to any information about the CEP assets for a

-3-

year, ATG had no reasonable basis to rely on any alleged misrepresentation by them -- as opposed to representations by the MMT Trustee. Indeed, because of this, ATG asserted the same claims at issue here against the MMT Trustee in a lawsuit in Tennessee two and half years prior to the filing of this action.

Plaintiff's allegations against the Quantum Defendants also make no sense. Quantum and ATG, through ATG Catalytics, both purchased an ownership interest in the CEP assets. Plaintiff would have this Court believe that the Quantum Defendants knowingly purchased purportedly flawed CEP assets and effectively relied upon their own fraudulent misrepresentations. This makes no sense and, at minimum, demonstrates that the Quantum Defendants had no reason to make the alleged misrepresentations at issue.

Significantly, even if the Court were inclined to allow Plaintiff to replead, Plaintiff would be in no better position. Plaintiff's claims against the Quantum Defendants are barred by the applicable statute of limitations, which, at most, is three years. Not only did ATG have constructive knowledge of any purported defect associated with the CEP assets by virtue of running the CEP business after purchasing it in late 1998, ATG actually admitted in a prior lawsuit against the MMT Trustee that "the nature and scope of Q-CEP system deficiencies became evident to ATG" in at least "late 1999 or early 2000." This admission conclusively demonstrates that ATG had knowledge of the alleged CEP problems well outside the applicable statute of limitations period.

## BACKGROUND

On December 3, 1997, MMT filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts (the "Massachusetts Court"). Compl. ¶ 20. During the summer of 1998,

Messrs. Preston and Nagel resigned as officers or directors of MMT. See Compl. ¶ 29. Shortly thereafter, on or about August 24, 1998, the Massachusetts Court appointed a Trustee to manage MMT during the bankruptcy proceedings. See MMT Docket, Entry No. 355, In re Molten Metal Tech., Inc., No. 97-21385 (Bankr. D. Mass. 1997).

Several months later, on or about November 6, 1998, ATG and Quantum, a limited liability company established by Messrs. Preston and Nagel, submitted an offer/bid to purchase certain assets from the MMT Trustee ("Offer"), which was filed with the Massachusetts Court. Ex. A, Offer Letter dated November 6, 1998.[1] On or about November 25, 1998, the Massachusetts Court approved the sale of the CEP assets by the MMT Trustee to Quantum and ATG in accordance with the terms and conditions set forth in the Offer subject to certain revisions filed with the Court as an Exhibit A ("Order"). Compl. ¶ 38; Ex. B, Order Approving Sale. Under the terms of the Order, as amended by a letter agreement of sale dated December 1, 1998 (the "Letter Agreement"), ATG Catalytics L.L.C. ("ATG Catalytics") purchased the CEP assets. Compl. ¶ 40; Ex. C, Letter Agreement dated December 1, 1998.[2] Among other things, ATG purchased MMT's "Wet Waste" assets (a business that transports and treats low level nuclear waste), and Quantum purchased a research and development facility located in Fall River, Massachusetts from the MMT Trustee. Ex. C, Letter Agreement dated December 1, 1998. ATG Catalytics purchased the CEP assets, which included a plant

---

[1] The Court may consider publicly filed documents on a motion to dismiss. MGIC Indemnity Corp. v. Weisman, 803 F.2d 500, 524 (9th Cir. 1986); Neilson v. Union Bank of California, 290 F. Supp. 2d 1101, 1112 n. 37 (C.D. Cal. 2003); see also Alternative Energy, Inc. v. St. Paul Fire and Marine Insurance Co., 267 F.3d 30, 33-34 (1st Cir. 2001).

[2] The Court may consider documents that are alleged in the complaint on a motion to dismiss. In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); Neilson, 290 F.2d at 1112; Perry v. New England Business Service, Inc., 347 F.3d 343, 345 (1st Cir. 2003); Raytheon Co. v. Continental Casualty Co., 123 F. Supp. 2d 22, 24 n.1 (D. Mass. Nov. 14, 2000); Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) Plaintiff relies on the Letter Agreement to demonstrate that ATG Catalytics acquired the CEP assets. Compl. ¶ 40.

located at Bear Creek Road, Oak Ridge, Tennessee (the "Bear Creek Facility"). Id.; see Compl. ¶ 21.

As part of the agreement, ATG established ATG Catalytics, the entity that purchased and operated MMT's CEP business, and issued a 10% percent ownership interest in ATG Catalytics to Quantum. See Ex. B, Order Approving Sale, Ex. A (reflecting that Quantum Catalytics would receive a ten percent interest). In exchange, Quantum issued to ATG an option to purchase a 25% ownership interest in Quantum to be exercised any time in the following three years.[3] Mr. Preston also became a director of ATG Catalytics.

Under the Letter Agreement, ATG Catalytics and Quantum agreed to make minimum annual installment payments of $800,000 for a five-year period to the MMT Trustee commencing on December 1, 1999. The minimum payment was determined largely based on the revenues of the CEP plant purchased by ATG Catalytics.[4] Ex. C, Letter Agreement dated December 1, 1998. ATG, Inc. guaranteed the minimum payment and was jointly and severally liable for it. Id. ATG Catalytics never paid the annual payment due to the MMT Trustee on December 1, 2000. As a result, on or about April 10, 2001, the MMT Trustee commenced an adversary proceeding against Quantum seeking the $800,000 minimum installment with the Massachusetts Court. Ex. D, MMT Complaint Against Quantum. On or about August 9, 2002, the MMT Trustee agreed to settle the case after Quantum was forced to

---

[3] A year later, on or about January 2000, after ATG Catalytics had been running the Bear Creek Facility for about a year, ATG agreed to purchase Quantum's ten percent interest in ATG Catalytics in exchange for surrendering its option to purchase 25% of Quantum. ATG also guaranteed to pay the minimum EBITDA payment ($800,000 per year) to the MMT Trustee.

[4] In December 1998, the revenues of the CEP plant purchased by ATG Catalytics were running at an annual rate of approximately $17 million per year, whereas revenues of the assets purchased by Quantum Catalytics were approximately $0.4 million per year. Therefore, the minimum payment, based on EBITDA, negotiated with the MMT Trustee was almost entirely based on the business purchased by ATG Catalytics and comprised approximately ninety-five percent of the total payment.

sell substantially all of its assets at a public auction and turn those proceeds over to the MMT Trustee.  Ex. E, Trustee's Motion To Approve Settlement Of Adversary Proceeding.

On or about June 13, 2001, the MMT Trustee also commenced a lawsuit against ATG Catalytics and ATG, Inc., which was subsequently removed to the United States District Court for the District of Tennessee (the "Tennessee Court"), seeking the $800,000 minimum installment.  Ex. F, Notice of Removal.  On July 11, 2001, in its answer, ATG denied the allegations asserted by the MMT Trustee and asserted a counterclaim against the MMT Trustee for alleged misrepresentation/fraudulent inducement in connection with the acquisition of the CEP assets.  Ex. G, ATG's Answer And Counterclaim.  After the MMT Trustee filed a motion to dismiss arguing that, among other things, ATG failed to assert claims with particularity, ATG filed a response with an accompanying affidavit by Michael McCauley, the plant manager of the Bear Creek facility, who admitted that "[b]ased on [his] experience at the Plant and with the Q-CEP system, [he] did not believe the nature and scope of Q-CEP system deficiencies became evident to ATG until at least late 1999 or early 2000."  Ex. H, ATG's Response to Motion to Dismiss And Accompanying Affidavit of Michael McCauley.  Shortly thereafter, the Tennessee Court dismissed ATG's counterclaim because ATG failed to seek leave from the Massachusetts Court to assert it.  Ex. I, Memorandum and Order.  Thereafter, on information and belief, the lawsuit was stayed after ATG filed its petition for relief under Chapter 11 of the Bankruptcy Code on December 3, 2001.  Over two years later, on December 2, 2003, ATG commenced this lawsuit against the Quantum Defendants, among others.

## ARGUMENT

I. **PLAINTIFF'S CLAIMS AGAINST THE QUANTUM DEFENDANTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

   A. **Counts II And III Should Be Dismissed Because They Fail To Plead Facts With Particularity As Required Under Rule 9(b).**

Fed. R. Civ. P. 9(b) requires that a plaintiff leveling fraud claims set forth the basis of those claims with particularity. Specifically, Rule 9(b) mandates that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated <u>with particularity</u>." Fed. R. Civ. P. 9(b) (emphasis added). While there is a split in this district as to whether 9(b) applies to negligent misrepresentation claims, where, as here, plaintiff's negligent misrepresentation claim is based on the very same allegations that form the basis for the fraud claim, it too should be subject to the heightened pleading standard. See <u>Bamberg v. SG Cowen</u>, 236 F.Supp.2d 79, 91 (D. Mass. 2002) (noting split in district in regard to whether 9(b) applies to negligent misrepresentation claims); <u>Lindner Div. Fund Inc.</u>, 880 F.Supp. 49 (D. Mass. 1995) (applying Rule 9(b) and dismissing negligent misrepresentation claims); <u>Powers</u>, 926 F.2d at 111 (dismissing fraud and misrepresentation claims); <u>see</u> <u>also</u> <u>In re Stac. Elecs. Sec. Litig.</u>, 89 F.3d 1399, 1405 (9th Cir. 1996) ("Because the same policy considerations apply to [non-fraud] claims sounding in fraud, we hold that persons making such claims must state with particularity the circumstances constituting the alleged fraud").

The purpose of the particularity requirement is "to provide notice to the defendant of the grounds on which the plaintiff's fraud claim rests ... to diminish the possibility that a plaintiff with a largely groundless claim will be able to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value,

rather than a reasonable hope of prevailing … and to safeguard defendants from frivolous charges which may damage their reputations." Lindner Div. Fund, Inc., 800 F. Supp. at 56-57; see also Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997) (purpose of particularity requirement is "provide a defendant with fair notice of a plaintiff's claim, to safeguard a wrongdoing, and to protect a defendant against the institution of strike suit"); Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985) (similar). In addition, "[t]he requirements of Rule 9(b) are designed to prohibit a plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." Semegen, 780 F.2d at 731.

Therefore, under Rule 9(b), a plaintiff alleging fraud or mistake must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Suna, 107 F.3d at 68 (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). "[I]ndiscriminately grouping all the individual defendants into wrongdoing monolith" violates Rule 9(b). Lubin v. Sybedon Corp., 688 F. Supp. 1425, 1443 (S.D. Cal. 1988). Rather, a plaintiff must identify with specificity the date, time, place, speaker, and content of a misrepresentation, along with an explanation as to why a statement was false or misleading at the time it was made, to overcome a motion to dismiss. E.g., Blacksmith Investments, LLC, No. 04-10369NG, 2005 WL 1038943, at * 5 (D. Mass. March 16, 2005) (dismissing fraud and misrepresentation claims for failure to plead with particularity); Semegen, 780 F.2d at 731 (affirming dismissal of a fraud claim under Rule 9(b) and stating that "the absence of specification of any times, dates, places or other details of that alleged fraudulent involvement is contrary to the fundamental purposes of Rule 9(b)"); Misc. Service Workers v. Philco-Ford

rather than a reasonable hope of prevailing … and to safeguard defendants from frivolous charges which may damage their reputations." Lindner Div. Fund, Inc., 800 F. Supp. at 56-57; see also Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997) (purpose of particularity requirement is "provide a defendant with fair notice of a plaintiff's claim, to safeguard a wrongdoing, and to protect a defendant against the institution of strike suit"); Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985) (similar). In addition, "[t]he requirements of Rule 9(b) are designed to prohibit a plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." Semegen, 780 F.2d at 731.

Therefore, under Rule 9(b), a plaintiff alleging fraud or mistake must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Suna, 107 F.3d at 68 (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). "[I]ndiscriminately grouping all the individual defendants into wrongdoing monolith" violates Rule 9(b). Lubin v. Sybedon Corp., 688 F. Supp. 1425, 1443 (S.D. Cal. 1988). Rather, a plaintiff must identify with specificity the date, time, place, speaker, and content of a misrepresentation, along with an explanation as to why a statement was false or misleading at the time it was made, to overcome a motion to dismiss. E.g., Blacksmith Investments, LLC, No. 04-10369NG, 2005 WL 1038943, at * 5 (D. Mass. March 16, 2005) (dismissing fraud and misrepresentation claims for failure to plead with particularity); Semegen, 780 F.2d at 731 (affirming dismissal of a fraud claim under Rule 9(b) and stating that "the absence of specification of any times, dates, places or other details of that alleged fraudulent involvement is contrary to the fundamental purposes of Rule 9(b)"); Misc. Service Workers v. Philco-Ford

<u>Corp.</u>, 661 F.2d 776 (9th Cir. 1981) (affirming dismissal of a misrepresentation claim under Rule 9(b)); <u>Silicon Knights v. Crystal Dynamics, Inc.</u>, 983 F. Supp. 1303 (N.D. CA 1997) (dismissing fraud claims for failure to plead with particularity). Accordingly, general or conclusory assertions of fraud are insufficient to defeat a motion to dismiss. <u>Greenstone v. Cambex Corp.</u>, 975 F.2d 22, 25 (1st Cir. 1992); <u>Driscoll v. Landmark Bank for Savings</u>, 758 F. Supp. 48, 52 (D. Mass. 1991) ("Complaints that merely restate the elements of a claim are not sufficient to meet <u>Rule 9(b)</u>"); <u>Telerep Caribe, Inc. v. Zambrano</u>, 266 F.Supp.2d 284, 285-6 (D.P.R. 2003);

Plaintiff's thinly-pled Complaint utterly fails to meet these requirements. The crux of the Complaint against the Quantum Defendants is that "during their negotiations with ATG, the Individual Defendants made certain representations to ATG and its representatives regarding the efficacy of the MMT's CEP technology and the potential business value of the MMT Bear Creek Q-CEP operations in particular." Compl. ¶ 33. Plaintiff asserts that "MMT's CEP technology was, in fact, highly flawed and unsafe to operate" and that "a bi-product from the operation of CEP was a chemical compound known as Dioxin, an extremely toxic and difficult to dispose chemical that typically results from burning chlorine-based chemicals compounds with hydrocarbons." Compl. ¶ 23.

However, the Complaint fails to allege, as it must, <u>who</u> among the Quantum Defendants (or any of the defendants) made a false representation. See <u>Blacksmith Investments LLC</u>, 2005 WL 1038943 at *6 (dismissing fraud and misrepresentation claims and stating that the complaint failed to identify "who made the statements, who relied on them, where or when they were made, or even the contents of the allegedly misleading comments"). The Complaint also fails to identify any particular misrepresentation concerning either the "efficacy of the

MMT CEP technology" or the "potential business value of the MMT Bear Creek Q-CEP operations." Compl. ¶ 33. All that the Complaint refers to is Dioxin, "a bi-product for the operation of CEP," but does not explain how this alleged bi-product rendered the CEP technology "highly flawed" or "unsafe to operate" or whether it was even a subject of an alleged misrepresentation. The Complaint not only fails to identify the speaker of an alleged misstatement and or a single particular misrepresentation, it fails to identify a single document or allege any contemporaneous facts suggesting that any of the Quantum Defendants even knew that the alleged misrepresentation, whatever that misrepresentation may have been, was false when made -- the most basic allegation of intent to deceive.[5]

Accordingly, the Quantum Defendants will be severely handicapped in preparing its answer and defenses in this case, unless Plaintiff is required to provide, at a minimum, basic information such as what specific representation is at issue, by who, and why it was false. Plaintiff must also explain how the CEP technology failed to perform properly, when it failed to perform, and what facts tend to show that any of the Quantum Defendants or anyone else knew of those alleged falsehoods when the alleged statements were made. Rule 9(b) and fundamental fairness requires no less.

Finally, Plaintiff's inability to allege a claim against the Quantum Defendants is telling considering that Plaintiff was running the Bear Creek Facility since December 1998 and therefore had ample opportunity to develop its claims and conduct a factual investigation. During this time, Plaintiff had exclusive access to the CEP assets, and the Bear Creek Facility's book and records. Plaintiff also could have conducted a Bankruptcy Rule 2004

---

[5] Even if a misrepresentation were made regarding dioxin production, which there was not, dioxin production would have had no effect on the operation or economics of the CEP plant, and Plaintiff has failed to provide any basis to demonstrate how dioxin would be relevant to the operation of the CEP plant.

examination of some or all of the Quantum Defendants, but declined to do so.  With this backdrop, Plaintiff's unsupported claims are suspect at best.  These conclusory claims demonstrate either that Plaintiff does not have a factual basis to support a viable claim, or that Plaintiff's motivation in asserting these claims has little to do with attempting to allege a viable claim.  Either way, given that Plaintiff seeks $15 million in damages from the Quantum Defendants premised on unspecified and vague conduct, the Court should dismiss the case.[6]

   **B.   Counts II And III Should Be Dismissed Because They Fail To Plead Essential Elements.**

Pursuant to Fed. R. Civ. P. 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the plaintiff."  Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988) (citations omitted); see also Penniston v. Brown & Williamson Tobacco Corp., Case No. 99-cv-10628, 2000 WL 1585609, at * 3 (D. Mass. June 15, 2000). However, "the court need not accept as true conclusory allegations or legal characterizations cast in the form of factual allegations."  Silicon Knights, 983 F. Supp. at 1307; see also In re Stac Elecs., 89 F.3d 1399 (9th Cir. 1996) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."); see also Penniston, 2000 WL 1585609, at * 3.  "Dismissal can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Silicon Knights, 983 F. Supp. at 1307; see also Gooley, 851 F.2d at 515.

Plaintiff fails to allege essential elements required to maintain an action for fraud/misrepresentation and negligent misrepresentation.  In order to state a claim for fraud

---

[6] Although Plaintiff conveniently neglected to inform the Court, ATG purchased the Quantum Defendant's interest in ATG Catalytics in January 2000 -- after ATG Catalytics had been running the Bear Creek Facility for a year and had full access to safety, operational and financial data from the facility.  If nothing else, the fact that ATG would go forward and make a deal to obtain Quantum's interest in ATG Catalytics suggests that ATG was, in fact, satisfied with the performance of the CEP assets and the Bear Creek Facility.

under Massachusetts law, plaintiff must plead: (1) defendant made a false representation of a material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act thereon, (4) that the plaintiff relied upon the representation, and (5) as a result, suffered damage.  Sands v. Ridefilm Corp., 212 F.3d 657, 663 (1st Cir. 2000); Morgan v. Financial Planning Advisors, Inc., 701 F. Supp. 923, 926-27 (D. Mass. 1988); see also Neilson v. Union Bank of America, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) (setting forth substantially similar elements under California law); Wilkins v. NBC, 71 Cal. App. 4th 1066, 1081 (1999) (same).[7]

To state a claim for negligent misrepresentation, plaintiffs must establish that the defendant (1) in the course of its business, (2) supplied false information for the guidance of others, (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others, (5) by the others justifiable reliance upon the information, and (6) defendant failed to exercise reasonable care or competence in obtaining or communicating the information.  See Cummings v. HPG Int'l, Inc., 244 F.3d 16, 24-25 (1st Cir. 2001); see also B.L.M. Sabo & Deitsch, 64 Cal. Rptr. 2d 335, 342 (Cal. App. 1997) (setting forth substantially similar

---

[7] The laws of the Commonwealth of Massachusetts should govern this dispute.  It is clear that Quantum and ATG intended Massachusetts law to govern all disputes arising from or relating to the purchase assets by ATG Catalytics from the MMT Trustee.  For example, the terms and conditions of the Offer state "[e]nforcement of this Offer and legal matter not governed by the Code shall be determined in accordance with the laws of the Commonwealth of Massachusetts, without reference to its choice of law doctrine.  The Buyer consents to jurisdiction of the Court as to any proceeding to enforce or interpret this Agreement."  Ex. A, Offer Letter dated November 6, 1998, ¶ 18.  Also, the Letter Agreement provides that "[t]his letter agreement is governed by and construed in accordance with the internal laws of the Commonwealth of Massachusetts."  Ex. C, Letter Agreement dated December 1, 1998, ¶ 10(g).  Even absent such agreement, California conflict of law principles require the application of Massachusetts law.  California courts resolve choice-of-law disputes arising from tort claims using the "governmental interest analysis."  This analysis involves the following three steps: (1) determination of whether the foreign law invoked by a litigant differs from that of the forum; (2) if different, determination of each jurisdiction's interest in the application of its own law to determine whether true conflict exists; and (3) if true conflict, then analyze the comparative impairment of the interested jurisdiction and apply the law of the jurisdiction which would be more impaired if its law were not applied.  Tucci v. Club Mediterranee, S.A., 107 Cal. Rptr. 2d 401, 407 (2001) (applying Dominican Republic law over California law).  In any event, there is no conflict of law issue as to whether Massachusetts or California law should govern because the laws of both states do not conflict.

elements of a negligent misrepresentation claim under California law).  Also, the alleged misrepresentation must ordinarily be an affirmation of past or existing facts to be an actionable fraud claim.  Therefore, predictions as to future events are deemed opinions, and not actionable by fraud.  See Morgan, 701 F. Supp. at 927.

Here, Plaintiff's allegations fail to provide any support, and indeed undercut, the claim that the Quantum Defendants made a knowing or negligent misrepresentation and that ATG justifiably relied on it.  For example, the Complaint alleges that Messrs. Preston and Nagel were no longer affiliated with MMT at the time the misrepresentations were allegedly made.  Compl. ¶ 29.  In fact, on or about December 3, 1997, at the time MMT filed for bankruptcy, the top management at MMT was replaced and, in the summer of 1998, Nagel and Preston resigned from MMT's board.  The Court appointed the MMT Trustee in August 1998, and the MMT Trustee operated the CEP plant for four months prior to ATG Catalytic's purchase of the CEP assets.  Therefore, Messrs. Preston and Nagel were not in a position to be privy to any knowledge of the CEP operations other than the information provided by the MMT Trustee – the same information which was available to ATG.

Indeed, an outside engineering firm closely monitored the operation of the CEP plant at this time, and the MMT Trustee conveyed information received from that firm to ATG Catalytics.  Therefore, during this period, the MMT Trustee operated the Bear Creek Facility and controlled the CEP assets and used third-party engineering experts to provide operational data to all prospective buyers including ATG and Quantum.  There is no allegation that either Mr. Preston or Mr. Nagel were privy to, or had access to, any safety, operational, or financial data in the control of MMT.  Accordingly, based on the allegations in the Complaint, there is no basis to conclude that any of the Quantum Defendants had any material information about

-14-

the CEP assets during the time the MMT Trustee operated the business and controlled the CEP assets. Therefore, as plead, the facts do not demonstrate that the Quantum Defendant acted with knowledge or that ATG could have justifiably relied on any alleged misrepresentation by the Quantum Defendants -- as opposed to representations made by the MMT Trustee who had knowledge about the CEP assets and had been running MMT for four months.

ATG's own conduct suggests that ATG knew that if it had any case for a fraud or negligent misrepresentation, that case would be against the MMT Trustee, not the Quantum Defendants. ATG elected to assert a counterclaim against the MMT Trustee in the Tennessee lawsuit over what appears to be the very same unspecified conduct alleged here -- alleged misrepresentation/fraudulent inducement in connection with the acquisition of the CEP assets. Ex. G, ATG's Answer And Counterclaim. Plaintiff, on behalf of ATG, did not even file the present adversary proceeding until two and half years after ATG asserted the fraud counterclaim against the MMT Trustee -- apparently without success.

In addition, Plaintiff's allegations do not even make sense. Plaintiff's assertion that the Quantum Defendants made a fraudulent representation to mislead ATG into purchasing the CEP assets from the MMT Trustee makes no sense in light of the fact that Quantum and ATG purchased an ownership interest in the very same CEP assets -- as Plaintiff admits. Compl. ¶¶ 35, 36. Indeed, Quantum owned a ten percent interest in ATG Catalytics. Therefore, Plaintiff would have the Court believe that the Quantum Defendant not only made misrepresentations to ATG, despite owning a ten percent interest in ATG Catalytics, but that the Quantum Defendants also intentionally purchased the very same purportedly flawed assets. This simply

makes no sense and, in any event, does not support any inference that the Quantum Defendants knowingly intended to deceive ATG.[8]

## II. PLAINTIFF'S CLAIMS AGAINST THE QUANTUM DEFENDANTS ARE BARRED BY THE STATUTE OF LIMITATIONS.

Under Massachusetts law, actions of tort are governed by the three-year statute of limitations. See Mass. Gen. Laws ch. 260, § 2A ("[A]ctions of tort . . . shall be commenced only within three years next after the cause of action accrues."); see also Kent v. Dupree, 13 Mass. App. Ct. 44, 47 (1982) ("Fraudulent misrepresentation, an action sounding in tort, is subject to a three-year statute of limitations after the cause of action accrues"); Cargill v. Gilmore, No. 920485G, 1993 WL 818899, at *3 (Mass. Super. Ct. Aug. 13, 1993) (stating that "claims for negligent misrepresentation and fraud are governed by the three-year statute of limitations for tort claims"). Similarly, under California law, fraud claims are governed by a three-year statute of limitations period and negligent misrepresentation claims are governed by a two-year statute of limitations period. Cal. Code §§ 338, 339 (West 2004). "A cause of action accrues in a misrepresentation case when the alleged misrepresentation is discovered or reasonably should have been discovered, whichever occurs earlier . . ." Rohmtech, Inc. v. Taylor, No. 96-1535, 1997 WL 778669, at *7 (Mass. Super. Ct. Nov. 25, 1997) (citing Murphy v. Smith, 411 Mass. 133, 136 (1995)); see also Harrell v. 20th Century Ins. Co., 934 F.2d 203, 206 (9th Cir. 1991) (affirming dismissal of fraud claim on statute of limitations grounds and finding that plaintiff had constructive, if not actual, notice of the fraud). The limitation period may only be tolled where the defendant fraudulently concealed the cause of

---

[8] Plaintiff also asserts that the Quantum Defendants, ostensibly while officers and directors of MMT, were sued regarding the CEP technology and its alleged flaws. Compl. ¶¶ 25-27. Plaintiff fails to explain how any such action would be relevant to the claims asserted against the Quantum Defendants in this case.

action from the plaintiff, which was not alleged here. Petricca v. Simpson, 862 F.Supp. 13, 16 (D. Mass. 1994) (finding plaintiff's argument that defendant concealed the cause of action as disingenuous and without merit).

The Complaint alleges that "in 1998, the Individual Defendants approached ATG in order to propose a joint effort to acquire certain MMT assets" and "during their negotiations with ATG, the Individual Defendants made certain representations to ATG and it representatives regarding the efficacy of the MMT CEP technology and the potential business value of the MMT Bear Creek Q-CEP operations in particular." Compl. ¶¶ 32, 33 (emphasis added).[9] Accordingly, all the relevant conduct alleged in the Complaint concerns purported misrepresentations made in connection with and prior to ATG Catalytic's purchase of the CEP assets from the MMT Trustee in December 1998. At minimum, ATG should have discovered, or otherwise had constructive knowledge of, the alleged misrepresentations prior to purchasing the CEP assets in December 1998, and, in any event had ample opportunity prior to three years from the time the alleged misrepresentations were made to bring an action if appropriate. It did not. Therefore, under either Massachusetts or California law, Plaintiff's claims are barred.

---

[9] For purposes of accuracy, ATG approached Quantum at the suggestion of the MMT Trustee.

## CONCLUSION

For all of the foregoing reasons, the Quantum Defendants respectfully request that the Court dismiss the Complaint as to Counts II and III with prejudice as to the Quantum Defendants.

Dated:  June 2, 2005

Respectfully submitted,
**DEFENDANTS QUANTUM CATALYTICS LLC, JOHN PRESTON, and CHRISTOPHER NAGEL**
By their attorneys,

  /s/ Nancy E. Maroney
**Joseph S. Ayoub, Jr. (BBO #024900)**
**Nancy E. Maroney (BBO# 652324)**
**NUTTER MCCLENNEN & FISH, LLP**
**155 Seaport Boulevard**
**Boston, MA  02210**
**T. (617) 439-2000**
**F. (617) 310-9000**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by U.S. mail upon the attorney of record for each party who did not receive electronic service of this document.

  /s/ Nancy E. Maroney
Nancy E. Maroney

Dated:  June 2, 2005

1434802.1