# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**ROBERT I. HANFLING, CHAPTER 11 TRUSTEE FOR ATG, INC. AND ATG CATALYTICS L.L.C.**

          **Plaintiff,**

    **vs.**

**EPSTEIN BECKER & GREEN, P.C., et al.,**

          **Defendant(s)**

**C.A. No. 05-10077-RGS**

**June 23, 2006**

---

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AGAINST DEFENDANT EPSTEIN BECKER & GREEN, P.C.

The Plaintiffs, Robert I. Hanfling, Chapter 7 Trustee for ATG, Inc. (the "Trustee") and ATG Catalytics, LLC (together with the Trustee, the "Plaintiffs"), by their undersigned attorneys, Morgenstern Jacobs & Blue, LLC, hereby submit their memorandum of law in support of their motion for leave, pursuant to Fed. R. Civ. P. 15(a), to file an amended complaint against defendant Epstein Becker and Green, P.C. In support whereof, the Plaintiffs represent as follows:

## I. PRELIMINARY STATEMENT

1.    This litigation arises out of the purchase by ATG, Inc. of certain assets from the bankruptcy estate of Molten Metal Technology, Inc.("MMT") in or about December of 1999. ATG had been represented in that transaction by defendant Epstein Becker and Green, P.C. ("EBG"). Plaintiffs' claims against EBG arise out of that representation and, more specifically, out of EBG's failure to disclose, or adequately disclose material information pertaining to the assets being acquired by ATG and EBG's prior representation of MMT and other parties connected to MMT.

2.     Contemporaneously with this memorandum, the Plaintiffs have filed a Motion for Leave to File Amended Complaint Against Defendant Epstein Becker and Green, P.C. (the "Motion").  By their Motion, the Plaintiffs seek leave of Court to amend their initial complaint (the "Complaint") in this case in order to change and add certain specific factual allegations in the Complaint and to generally conform the Complaint to the  information learned by the Plaintiffs in the course of discovery.  A proposed amended complaint is annexed to the Motion. The Plaintiffs do not, by their Motion , seek to add any additional causes of action against EBG.

## II. PROCEDURAL BACKGROUND

3.     On December 3, 2003, the Plaintiffs initiated this case as an adversary proceeding (the "Adversary Proceeding") in the bankruptcy cases of ATG, Inc. and its wholly owned affiliates (including plaintiff ATG Catalytics, LLC).  The Adversary Proceeding was filed in the United States Bankruptcy Court for the Northern District of California (at Oakland) (the "Bankruptcy Court").   Service of process was completed on January 29, 2004 and certified to the Bankruptcy Court on February 3, 2004.

**Withdrawal of the Reference and
Change of Venue To District of Massachusetts**

4.     On or about April 2, 2004, EBG filed a motion and supporting papers with the United States District Court for the Northern District of California (the "California District Court") for an order withdrawing its reference of the Adversary Proceeding to the Bankruptcy Court.  Also on April 2, 2004, EBG filed an Answer to the Complaint with the Bankruptcy Court.

5.     On April 28, 2004, the California District Court (Hamilton, U.S.D.J.) entered an order for recommendation from the Bankruptcy Court whether the reference of the Adversary Proceeding should be withdrawn under 28 U.S.C. § 157(d).  On April 30,

2004, the Bankruptcy Court (Newsome, U.S.B.J.) recommended to the California District Court that reference of the Adversary Proceeding to the Bankruptcy Court be withdrawn.

6.    On or about June 9, 2004, EBG filed with the California District Court a memorandum and points of authorities in support of its motion to withdraw the reference of the Adversary Proceeding.  The Plaintiffs did not oppose EBG's motion to withdraw the reference. On July 19, 2004, the California District Court entered an Order granting EBG's motion to withdraw the reference. Oddly, the California District Court's order withdrawing the reference was limited to defendant EBG, and did not extend to the other defendants in the Adversary Proceeding.  Apparently, the Adversary Proceeding remained with the Bankruptcy Court as to all defendants other than EBG.  As part of its order withdrawing the reference, the California District Court scheduled a case management conference for September 23, 2004.

7.    On or about August 20, 2004, EBG filed with the California District Court a motion and supporting papers seeking entry of an order transferring the Adversary Proceeding from the California District Court to the United States District Court for the District of Massachusetts.  The California District Court scheduled a hearing on EBG's motion to transfer the case for September 29, 2004.  However, prior to that hearing, defendants John Preston, Christopher Nagel and Quantum Catalytics (collectively, the "Quantum Defendants"), on or about  September 15, 2004, filed a motion with the Bankruptcy Court to withdraw the reference of the Adversary Proceeding as to them. Two additional defendants, Ethan Jacks and Eugene Berman, had yet to seek withdrawal of the reference.

8.    On September 20, 2004 Plaintiffs and EBG filed a stipulation with the California District Court continuing the September 23, 2004 Case Management Conference until after the court could conduct a hearing on EBG's transfer motion, which stipulation the  California District Court promptly approved.  The Plaintiffs did not oppose EBG's transfer motion.  On September 29, 2004, the California District Court continued the hearing on EBG's transfer motion to December 1, 2004 and stayed any pre-

trial proceedings, motions, and discovery until that time. On October 21, 2004, all of the non-EBG defendants filed with the California District Court a notice of related adversary proceedings, wherein the non-EBG defendants alerted the District Court to the fact that, as a result of the California District Court's order of July 19, 2004 withdrawing the reference of the Adversary Proceeding as to defendant EBG only, there were now two separate cases pending, one before the Bankruptcy Court, and the other before the California District Court.

9.    On November 23, 2004, counsel for the Plaintiffs and all of the defendants filed a joint status report with the California District Court wherein the parties advised the Court that the Plaintiffs consented to withdrawal of the reference as to the remaining defendants, and to transfer of the entire case to the District of Massachusetts (Boston). In light of the parties' joint status report, the California District Court, on November 24, 2004, ordered withdrawal of the reference as to all of the remaining defendants in the case, and the transfer of the case to this Court. On or about December 27, 2004, more than a year after Plaintiffs commenced the case, the case was formally transferred out of the California District Court. The case arrived in this Court on or about January 13, 2005.

10.    On May 9, 2005, this Court issued a Notice of Scheduling Conference wherein the Court informed the parties that it had set a scheduling conference for June 6, 2005.  On May 31, 2005, the parties filed a joint statement in accordance with Local Rule 16.1(D).  The Scheduling Conference proceeded on June 6, 2005 as scheduled. During the conference, the non-EBG defendants informed the Court that they intended to press forward with motions to dismiss, and requested that discovery be stayed pending resolution of those motions.

11.    In their joint statement, the parties proposed a pretrial schedule, which was approved by the Court at the scheduling conference. The discovery schedule provided for completion of all fact discovery by December 20, 2005.

**Non- EBG Defendants' Motions to Dismiss:**

12.    On March 22, 2005, prior to the withdrawal of the reference and the transfer of this case to this Court, the non-EBG defendants filed motions to dismiss those counts of the Complaint directed to them with the Bankruptcy Court.[1]  Neither the Bankruptcy Court nor the California District Court ever resolved the non-EBG defendants' motions to dismiss, and those motions remained pending at the time this case was transferred into this Court.  Incorporated within the parties' joint statement was a briefings schedule for both of the pending motions to dismiss.  On August 19, 2005, the Court conducted a hearing on both motions to dismiss whereupon the Court granted in part, and denied in part, the motions to dismiss.

**Discovery:**

13.    Discovery in this case began in June of 2005. By November 2005, the parties had provided initial disclosures, propounded written discovery requests (e.g. interrogatories and requests for production of documents), and answers to written discovery. On November 30, 2005, before any depositions had been taken, the parties conferred concerning discovery issues and agreed that the discovery schedule would be extended and bifurcated into two distinct phases.  On November 30, 2005, the parties submitted a Joint Motion to Amend Scheduling Order to Provide for Phased Discovery, which bifurcated discovery into two phases. The Amended Scheduling Order set specific deadlines for the first discovery phase and for summary judgment motions. Deadlines applicable to Phase II discovery are dependent on whether summary judgment motions are filed and, if so, the date such motion(s) are resolved.

14.    On December 6, 2005, the Court approved the parties' phased discovery schedule.  Pursuant to the Amended Scheduling Order, the parties had until March 31,

---

[1] Two separate motions to dismiss were filed. One was filed jointly by defendants Eugene Berman and Ethan Jacks. Berman and Jacks were represented jointly by the same counsel.  The other motion was filed jointly by defendants John Preston, Christopher Nagel and Quantum Catalytics LLC, who were represented jointly by the same counsel.

2006 to complete written discovery and document production pertaining to issues covered in Phase I.

15.    Depositions pertaining to Phase I matters were to be completed by April 30, 2006. Both Plaintiff and EBG took depositions throughout the month of April.  Eight depositions were taken in April and one additional deposition was taken in May.[2]

### III.  RELIEF REQUESTED

16.    The Trustee is a plaintiff in this case by virtue of his role as the chapter 7 bankruptcy trustee of ATG and its affiliates.[3]  In accordance with his fiduciary duty as bankruptcy trustee, the Trustee investigated ATG's pre-bankruptcy business affairs in order to determine what rights of action the estate possessed against third parties.  Prior to his appointment as ATG's bankruptcy trustee, the Trustee did not hold any position with ATG or its affiliates and he was not involved in any way with the transactions and events that gave rise to this lawsuit, including the claims asserted against EBG.  By December of 2003, the Trustee had obtained information leading him to conclude that ATG possessed claims against the defendants in this action.  While the information available to the Trustee was sufficient to warrant commencement of this action, there was still much information to be learned through the discovery process.

17.    Through discovery in this case, the Plaintiffs and their counsel discovered relevant information about this case that they did not know when they initiated the case in December of 2003. These facts learned through discovery include, but are not limited to, the following:

---

[2] On  April 25, 2006, the parties submitted a joint motion to amend the discovery schedule to permit the parties to take the deposition of Carol Schwartz Rendon, an attorney previously employed by EBG, in May of 2006, after close of Phase I discovery.  On May 3, 2006, the Court approved the stipulation.

[3]  ATG filed a voluntary petition for relief under title 11 of the United States Code with the Bankruptcy Court on December 3, 2001 (Case No. 01-46389 (RJN)). By order dated February 11, 2002, the Bankruptcy Court approved the appointment of Mr. Hanfling to serve as the Chapter 11 Trustee for ATG, Inc. effective February 6, 2002.  On June 12, 2002, the Trustee directed and authorized ATG's wholly owned subsidiaries, including plaintiff ATG Catalytics, LLC, to likewise file voluntary petitions for relief with the Bankruptcy Court.  By order dated April 27, 2003, the Bankruptcy Court converted ATG's bankruptcy cases from cases pending under chapter 11 to chapter 7.  The Trustee was then appointed to serve as chapter 7 Trustee of ATG and its affiliates.

(a)   That defendant EBG had represented some 24 individual employees of MMT in connection with certain federal investigations of MMT being conducted in 1997 and 1998, including investigations by the Department of Energy and the Federal Bureau of Investigation. There was also an investigation being conducted by the House Commerce Committee, as well as a grand jury investigation (collectively the "Federal Investigations").

(b)   That among the issues being investigated in the Federal Investigations was whether the technologies of MMT (including the technologies ultimately sold to ATG) actually worked and functioned as promoted by MMT's officers and directors.

(c)   That defendant EBG was a *de facto* party to, and actively participated in, a joint defense agreement with several other counsel for MMT and certain officers and directors of MMT in connection with the Federal Investigations, and that, by its participation in this joint defense agreement, EBG was in a confidential, attorney-client relationship with MMT.

(d)   That EBG provided counseling directly to MMT in connection with the Federal Investigations.

(e)   That EBG, at the time it undertook to represent ATG in purchase of certain assets from MMT, asserted a claim against MMT (as evidenced by a proof of claim filed by EBG with the bankruptcy court overseeing MMT's bankruptcy case).

(f)   That disclosures made, or ostensibly made, by EBG to ATG concerning its potential conflicts of interest, were oral only, incomplete and inaccurate, and that EBG failed to obtain written waiver of any potential conflict from ATG.

(g)   That EBG failed to adequately disclose its ongoing representation of Christopher Nagel, who was being represented separately from ATG in the acquisition of MMT assets.

18.   In addition, through discovery, the Plaintiffs learned additional information concerning the "MMT Litigation" alleged in the Complaint, including the identity of the parties to that proceeding, and identity of EBG's clients in that proceeding.

19.   Plaintiffs also learned that an EBG attorney in fact reviewed the McConchie Letter, which describes in great detail the defects and deficiencies of the CEP technology and, that EBG failed to disclose the letter or the substance thereof to ATG.

20.    These facts provide further support to the Plaintiff's claim against EBG, and Plaintiff, by this motion, seeks permission to amend the Complaint in order to add these specific allegations and to correct and modify certain other allegations in the Complaint.

21.    In addition, the Plaintiffs have settled this case with respect to all of the non-EBG defendants. [4] The Complaint, however, contains various allegations directed specifically to the Plaintiffs' claims against the non-EBG defendants. Those allegations are not germane to Plaintiffs' claims against EBG.

22.    By the Motion, the Plaintiffs request leave to file an amended complaint, substantially in accordance with the proposed amended complaint attached as Exhibit "A" to the Motion, which includes allegations related to the information learned by Plaintiffs through discovery to date, and which excludes allegations related to the non-EBG defendants. The Plaintiffs do not, however, seek leave to assert new causes of action against EBG, and the proposed amendments are limited to specific factual allegations in the complaint.

## IV. **ARGUMENT**

23.    Amendments to pleadings are governed by Federal Rule of Civil Procedure 15.    Rule 15(a) provides:

> (a) **Amendments**. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave to amend shall be free given when justice so requires.  A party shall plead in response to an amended pleading with  the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court orders otherwise.

Fed. R. Civ . P. 15(a).

---

[4] On June 6, 2006, in accordance with the terms of settlement agreements reached between the Plaintiffs and each of the non-EBG defendants, the Plaintiffs filed a joint stipulation of dismissal of this action., leaving only EBG as a defendant.

24.     EBG filed an answer to the Complaint on April 2, 2004. Furthermore, EBG does not consent to Plaintiffs' motion to amend the Complaint.[5]    Accordingly, Plaintiffs may only amend the Complaint at this time by leave of Court.   *See* Fed. R. Civ. P. 15(a).

**Plaintiffs' Request For Leave Was Not Unduly Delayed:**

25.     The Plaintiffs request leave to amend the Complaint now, rather than at an earlier stage in the case, for two reasons.  First, many of the proposed amendments relate to the deletion of allegations in the Complaint directed to the non-EBG defendants. Many of those allegations are not germane to the Plaintiffs' remaining claim against EBG.  Plaintiffs were not prepared to remove those now irrelevant allegations unless and until the settlements with the non-EBG defendants were completed.   The settlements were recently completed. On June 6, 2006, the Plaintiffs filed a stipulation of dismissal, signed by counsel for all of the parties to this case including EBG.  Now is the appropriate time to amend the complaint to remove the now-irrelevant portions of the Complaint.

26.     Second, the balance of the proposed amendments are appropriate to conform the specific allegations in the Complaint to information learned through discovery conducted in the case thus far.[6]  As previously indicated, the Trustee was not connected with ATG at the time of the events alleged in the complaint and was not personally involved in those events. Consequently, the Plaintiffs needed to utilize discovery to obtain specific information related to the case not otherwise available to them.  Although the case was filed in December of 2003, the parties did not begin to undertake discovery until June of 2005, after the various motions related to withdrawal of the reference and change of venue were ultimately resolved.  Plaintiffs did not litigate or dispute the

---

[5] On May 22, 2006, Plaintiffs' counsel wrote to EBG's counsel and informed EBG's counsel that Plaintiffs intended to file a motion seeking leave to amend the complaint in order to conform the allegations in the complaint to facts revealed in discovery. On May 24, 2006, EBG's counsel informed Plaintiff's counsel, in writing, that EBG would oppose the motion on futility grounds.
[6] Although the First Phase of Discovery is complete, the second phase of discovery is not.

defendants' various procedural motions, but instead provided their express consent to each motion in order to avoid the delay that might otherwise result.

**EBG Will Not Be Prejudiced If Plaintiffs**
**Are Permitted Leave To Amend At This Time**

27.    None of the proposed amendments will necessitate reopening Phase I discovery.  No new causes of action are being asserted. The gravamen of Plaintiffs' claim against EBG is not changing.  No facts or circumstances not already addressed or revealed in discovery are being alleged for the first time by the proposed amendments.  Thus, even though Phase I discovery has ended, Plaintiffs will suffer no unfair prejudice if the Court grants the Plaintiffs leave to amend the Complaint.

**The Proposed Amendment Is Not Futile**:

28.    A proposed amendment to a complaint will be deemed futile for the purpose of Rule 15(a) if it serves no legitimate purpose or is without legal merit.  *Correa-Martinez v. Arillage- Bleendez*, 903 F.2d 49, 59 (1st Cir. 1990). An amendment is not deemed futile as long as the proposed amended complaint set forth a general scenario that, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory.  *Hatch v. Dep't for Children, Youth and Their Families*, 274 F.3d 12, 19 (1st Cir. 2001); *Mangan v. Rumo*, 208 F.R.D. 468, 468-9 (D. Maine 2002).

29.    The gravamen of the claim asserted against EBG in the Complaint is that EBG, through its prior, undisclosed representation of MMT became aware of serious problems, or at least contentions of serious problems, concerning the very assets to be acquired by ATG from MMT, and that EBG failed to disclose such knowledge, and its prior, conflicting representations, to ATG.  By the proposed amendments, the Plaintiffs seek to allege facts that more precisely reflect the nature and extent of EBG's conflict of interest in undertaking to represent ATG.  The allegations in the complaint, as amended, will, if proven, entitle the Plaintiffs to relief against EBG.  The proposed amendments, therefore, are not futile.

## V. <u>CONCLUSION</u>

30.    Rule 15(a) provides that leave to file amended pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  Under certain circumstances, such "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, (and) futility of amendment ..." a proposed amendment may properly be denied. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  None of these circumstances exist here.  Accordingly, for all the foregoing reasons, the Court should grant Plaintiffs' request for leave to amend the Complaint in accordance with the proposed amended complaint annexed as Exhibit "A" to the Motion.


Dated:   Norwalk, Connecticut
              June 23, 2006

                                             THE PLAINTIFFS,
                                             By their attorneys,
                                             MORGENSTERN JACOBS  & BLUE,
                                             LLC


                                             By: /s/ Robert M. Fleischer  _____
                                                  Mark R. Jacobs
                                                  Leslie L. Lane
                                                  Robert M. Fleischer
                                                  Merritt View
                                                  383 Main Avenue
                                                  Norwalk, Connecticut 06851
                                                  Phone: (203) 846-6622
                                                  Fax: (203) 846-6621

**<u>Certification of Service</u>**

The undersigned hereby certifies that a copy of the foregoing Memorandum of

Law was sent on this 23rd day of June, 2006 to the following:

      Paula M. Bagger, Esq.
      Marjorie S. Cooke, Esq.
      Cooke, Clancy & Gruenthal LLP
      265 Franklin Street
      Boston, MA 02110
      *Fax: 617-428-6868*

              By: <u>/s/ Robert M. Fleischer         </u>
                   Robert M. Fleischer