UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT I. HANFLING, CHAPTER 7 TRUSTEE FOR ATG, INC. AND ATG CATALYTICS L.L.C., <br><br> Plaintiffs, <br><br> vs. <br><br> EPSTEIN BECKER & GREEN, P.C., et al., <br><br> Defendants. | C.A. No. 05-10077-RGS <br><br><br><br><br><br><br><br> July 18, 2006 |

PLAINTIFFS' STATEMENT PURSUANT TO
LOCAL RULE 56.1 OF MATERIAL FACTS AS TO
WHICH THERE IS A GENUE ISSUE TO BE TRIED

The Plaintiffs, Robert I. Hanfling, Chapter 7 Trustee for ATG, Inc. and ATG Catalytics, LLC (together the "Plaintiffs"), pursuant to Local Rule 56.1 and the Order of the Court entered in the above-captioned case on July 10, 2006 granting Plaintiffs' Motion, On Consent, To Extend Plaintiffs' Deadline To File Opposing Statement of Facts Pursuant To Local Rule 56.1, hereby submit their paragraph-by-paragraph response to the Statement of Undisputed Material Facts (the "Defendant's Statement") filed by defendant Epstein, Becker & Green, P.C. ("EBG") on July 7, 2006.[1] References herein to "Fleischer Affidavit" refer to the affidavit of Robert M. Fleischer, filed with the Court on July 7, 2006. References herein to "Fleischer Supp. Affidavit" refer to the Supplemental Affidavit of Robert M. Fleischer, filed with the Court on July

---

[1] The capitalized terms used herein shall have the same meaning as the capitalized terms used in Defendant's Statement.

18, 2006. References to "Bagger Affidavit" refer to the affidavit of Paula M. Bagger filed with the Court on June 7, 2006.

    1.    To the extent that EBG asserts, in paragraph 1 of Defendant's Statement, that the attorney client relationship between EBG and the MMT employees or MMT terminated after early 1998, there is a disputed issue of fact. According to attorney Rendon, although activity on the Federal Investigations had "wound down to a trickle" by the time Ms. Rendon left EBG in August of 1998, there is no evidence that EBG had ceased altogether to act as counsel to MMT employees or to MMT prior to ATG's retention of EBG in connection with ATG's bid on, and acquisition of assets from MMT. *See* Rendon Dep. at p. 27, lines 10 - 24 (Bagger Affidavit, Exhibit C). Furthermore, EBG continued to represent Christopher Nagel subsequent to attorney Rendon's departure from EBG, in connection with various matters. For example, EBG continued to represent Christopher Nagel in connection with the MMT securities class action case, as evidenced by the letters of attorney Rendon to Michael Tuteur of EBG dated November 3, 1998 and November 19, 1998. *See* Bagger Affidavit, Exhibits G and H. EBG also represented Christopher Nagel in other matters as well, as evidenced by certain documents produced to Plaintiffs by EBG under the designation of "Confidential." [2] Notwithstanding his deposition testimony to the contrary, Michael Tuteur clearly and unmistakably confirmed by email on November 16, 1998 that EBG "continued" to represent Christopher Nagel in connection with the shareholder

---

[2] On February 28, 2006 the Court entered an Order approving the Confidentiality Stipulation And Protective Order (the "Confidentiality Stipulation") submitted jointly by the parties to this action. Under Section 3(g) of the Confidentiality Stipulation, documents designated "Confidential" must be filed with the Court under seal. The relevant documents evidencing EBG's representation of Christopher Nagel in October of 1998 include documents stamped "EBG 3634" through "EBG 3635", and "EBG 3796." Plaintiffs will file these documents under seal, pursuant to Local Rule 7.1, prior to the hearing on EBG's motion for summary judgment.

litigation. *See* Fleischer Affidavit, Exhibit B, 3rd page (EBG 2081). Plaintiffs submit that the records undermine the testimony of attorneys Rendon and Tuteur.

    2.    To the extent that EBG asserts in paragraph 2 of the Statement that attorney Rendon was the only EBG attorney involved in the representation of MMT or MMT employees in the investigation, there is an issue of fact in dispute, although Plaintiffs do not dispute that Ms. Rendon performed most of the work performed by EBG. Billing records produced by EBG in discovery in this case evidence that at least one other EBG attorney (Mary Elizabeth Basile) did work on the Federal Investigations. The billing records show that attorney Basile billed 5.2 hours on November 20, 1997. *See* Fleischer Supp. Affidavit, Exhibit I. In the course of discovery in this case, EBG produced a Billed and Unbilled Recap of Time report for MMT (EBG 3627 through EBG 3633). This document reflects work performed by at least one other EBG attorney (Mary Elizabeth Basile) in connection with Molten Metals in November of 1997. This document was produced by EBG under the designation "Confidential." In accordance with the Confidentiality Stipulation, Plaintiffs will file these documents under seal prior to the hearing on EBG's Motion for Summary Judgment.

    Further, to the extent that EBG asserts, in paragraph 2 of the Statement, that problems with MMT's technologies were not raised or addressed in the federal investigations, there is a disputed issue of fact. In Ms. Rendon's Memorandum to Ethan Jacks and Eugene Berman dated August 25, 1997 (Bagger Affidavit, Exhibit F), Ms. Rendon wrote, regarding the Federal Investigations:

> "In many cases, these questions created an opening for the witnesses to educate the agents about the success of the technology, its operations, and the

> accomplishments under the PRDA. In this area, the witnesses were all terrific salesmen for the CEP process and MMT. The investigators clearly began the process with the understanding that the technology does not work, and that the PRDA was a callosal (*sic*) waste of money. I think that, by the end of the two days of interviews, the interviewers were questioning that factual premise."

*See* Bagger Affidavit, Exhibit F, pg. 6 (second full paragraph). Furthermore, Ms. Rendon did not testify that issues regarding MMT's technology were not raised in the course of the Federal Investigations. Rendon Tr. p. 82, line 12 through p. 84, line 2 (*See* Fleischer Supp. Affidavit, Exhibit J.) The issue is not whether problems with the technology were the "focus" of the Federal Investigations, but simply whether it came up at all. A copy of the relevant portions of Ms. Rendon's deposition transcript is attached as Exhibit J.

  3. Plaintiffs do not dispute the matters recited in paragraph 3 of EBG's Statement.

  4. To the extent EBG asserts in paragraph 4 of the Statement that there was no attorney-client relationship between EBG and Christopher Nagel regarding the McConchie matter, there is a disputed issue of fact. Further, to the extent that EBG asserts that EBG did not come into possession of information regarding the substance of Earl McConchie's allegations regarding problems with MMT's CEP/Q-CEP technologies, and allegations regarding the honesty and credibility of certain MMT officers and directors, including Christopher Nagel, there is a disputed issue of fact. Ms. Rendon testified that she read the McConchie letter. Rendon Dep. p. 85, line 25 through p.88, line 13 (Fleischer Affidavit, Exhibit C). EBG's billing invoices confirm that Christopher Nagel consulted with Ms. Rendon regarding the McConchie matter.

See EBG billing invoice dated June 24, 1998, entries for April 20, 1998 and April 21, 1998 (Fleischer Affidavit, Exhibit D).

5.    To the extent that EBG asserts, in paragraph 5 of the Statement, that EBG's representation of MMT employees terminated upon Ms. Rendon's departure from EBG, there is a disputed issue of fact. *See* Plaintiffs' response, above, to paragraph 1 of EBG's Statement.

6.    Disputed. There are several bases for Plaintiff's assertion that EBG did, in fact, have an attorney-client relationship directly with MMT, and not just the MMT employees.

First, the extent of the communications directly between Ms. Rendon and MMT between August, 1997 and April, 1998, evidences that there was an attorney client relationship between EBG and MMT. The billing statements submitted by EBG to MMT for payment reflect numerous conferences and meetings between, on the one hand, Ms. Rendon, and on the other, Ethan Jacks or Eugene Berman, or both. As reflected in Ms. Rendon's memorandum of August 25, 1997, Mr. Jacks served as General Counsel for MMT, and Mr. Berman served as Vice President, Governmental and External Affairs for MMT. *See* Bagger Affidavit, Exhibit F. Neither Mr. Jacks nor Mr. Berman were among the MMT employees represented individually by EBG. *See* Rendon Dep. p. 45, lines 15 through 22; and p. 50, line17 through p.51, line 7 (Fleischer Supp. Affidavit, Exhibit J).

Specifically, EBG's billing statements contain at lease forty-five (45) separate entries reflecting meetings or conferences between Ms. Rendon and either Mr. Jacks or Mr. Berman, or both:

(a) The proof of claim (the "Proof of Claim") filed by EBG in MMT's bankruptcy case contains twenty-one (21) entries reflecting meetings or conferences between Ms. Rendon and MMT from August 28, 1997 through about December, 1997. *See* Fleischer Affidavit, Exhibit G.

(b) A "draft" billing invoice dated November 10, 1997 from EBG addressed directly to MMT contains numerous entries reflecting meetings or conferences between Ms. Rendon and MMT, many of which overlap the entries contained in the Proof of Claim. However, the November 10, 1997 draft invoice contains seven (7) additional, earlier, entries not included in the proof of claim. *See* Fleischer Supp. Affidavit, Exhibit K.

(c) A billing invoice dated February 6, 1998, issued by EBG to MMT, reflects a conference between Ms. Rendon and Mr. Jacks and Mr. Berman, and others, on January 28, 1998. *See* Fleischer Supp. Affidavit, Exhibit L.

(d) Billing invoices dated April 13, 1998 submitted by EBG to MMT for services performed between February 27, 1998 and March 31, 1998, contain twelve (12) separate entries reflecting meetings or conferences between Ms. Rendon and ether Mr. Jacks or Mr. Berman or both. *See* Fleischer Supp. Affidavit, Exhibit M.

(e) Billing invoices dated June 24, 1998 submitted by EBG to MMT for services performed in April of 1998 contain four (4) separate entries that reflect conferences between Ms. Rendon and Mr. Jacks or Mr. Berman. *See* Fleischer Affidavit, Exhibit D.

Second, the events surrounding EBG's representation of Rhonda Walker, an MMT employee, in connection with the Federal Investigations, further evidence that

-6-

EBG was acting in all regards to protect the interests of MMT. In connection with a Title VII claim asserted by Ms. Walker against MMT, MMT and Ms. Walker reached a settlement agreement. Ms. Walker possessed material information relative to the Federal Investigations that was potentially harmful to MMT. As part of the settlement agreement, Ms. Walker was required to retain EBG to represent her in the Federal Investigations. Ms. Walker would not retain EBG until MMT resolved her Title VII claim. This information was learned by the MMT Trustee's counsel, Alan Braunstein, in connection with his investigation of MMT's affairs. *See* Braunstein Depo., p. 53, line 7 through p. 54, line 10 (Fleischer Supp. Affidavit, Exhibit N). Mr. Braunstein's testimony is corroborated by a letter dated November 10, 1997 from A. James Andrews, of the firm Andres & Hudson, P.C., to Carole Schwartz Rendon. In that letter, Mr. Andrews states that Ms. Walker would not agree to be represented by EBG until her Title VII matter with MMT is resolved. *See* Fleischer Supp. Affidavit, Exhibit O.

Third, on August 27, 1998, Ms. Rendon issued a memorandum to Ethan Jacks and Eugene Berman, with the subject "Summary of Employee Interviews," on the front page, in bold print, all capital letters, is the statement "PRIVILEGED AND CONFIDENTIAL: SUBJECT TO ATTORNEY-CLIENT AND ATTORNEY WORK PRODUCT PRIVILEGE." *See* Bagger Affidavit, Exhibit F. The memorandum is not directed to any of the MMT employees that retained EBG. Furthermore, in this memorandum, Ms. Rendon identifies and discuses five specific "concerns" (see page 6 of the memorandum). Those concerns all relate to MMT directly. They do not relate specifically to any of the MMT employees represented individually by MMT. Mr.

Berman could not, during his deposition, explain how those concerns related to EBG's individual clients. *See* transcript of Deposition of Eugene Berman, p. 32 through 38 (Fleischer Supp. Affidavit, Exhibit N). Thus, Ms. Rendon's August 25, 1997 memorandum evidences an attorney-client relationship directly between EBG and MMT.

Fourth, EBG participated in a joint defense agreement pertaining to the defense of MMT in, among other things, the Federal Investigations. In 1997, the law firm Latham & Watkins ("L&W"), counsel for MMT, entered into a written Confidentiality and Joint Defense Agreement (the "Joint Defense Agreement") with MMT, MMT's co-counsel (Bingham, Dana & Gould LLP), three of MMT's officers and directors and their respective counsel (the firms Hale & Dorr LLP, Vinson & Elkins LLP, and Duncan & Allen). The Joint Defense Agreement is the subject of a ruling of the United States Bankruptcy Court in MMT's bankruptcy case issued in 2003 upon L&W's application for allowance of fees and expenses, in which the Bankruptcy Court denied L&W's application and ordered disgorgement on account of L&W's failure to disclose its prior participation in the Joint Defense Agreement at the time it was employed as special counsel to MMT. *See* <u>In re Molten Metal Technology, Inc.</u>, 289 B.R. 505 (Bankr. D. Mass. 2003). Plaintiffs' request that the Court take judicial notice, pursuant to Fed. R. Evid. 201, of the matters recited in that decision of the Bankruptcy Court, which is reported at 289 B.R. 505.

There is evidence that EBG was a party to, and participated in, the Joint Defense Agreement, even though it may not have signed the Joint Defense Agreement with MMT and the other parties to that agreement:

(a)  On October 23, 1997, L&W issued a facsimile and letter to Mr. Berman, John Coyle (of the firm Duncan & Allen), three attorneys with Vinson & Elkins, Karen Green (of the firm Hale & Dorr), Carole Schwartz Rendon (EBG) and Joseph Savage, (of the firm Testa, Hurwitz,& Thibeault). The subject line on the cover page reads "Joint Defense Conference Call."  The subject line on the letter attached to the cover page similarly stated "Joint Defense Conference Call."  *See* Fleischer Supp. Affidavit, Exhibit Q.  These attorneys are all identified on document obtained from MMT Trustee's counsel, titled "Molten Metal Technology, Inc., DOE Subpoena, Contact List." *See* Fleischer Supp. Affidavit, Exhibit R.  That Ms. Rendon was participating in "joint defense" conference calls is evidence that EBG was a party to the Joint Defense Agreement.

(b). Ms. Rendon, on her August 25, 1997 memo to Mr. Jacks and Mr. Berman (Bagger Affidavit, Exhibit F), copied Karen Green (Hale & Dorr), Roger Goldman (L&W) and Joseph F. Savage (Testa, Hurwitz & Thibeault, LLP), all attorneys with firms participating in the Joint Defense Agreement. Furthermore, the statement at the top of the document that the memorandum is "Privileged and Confidential: Subject to Attorney-client and Attorney Work Product Privilege" is further evidence that Ms. Rendon prepared this document in connection with her participation in the Joint Defense Agreement. Moreover, Ms. Rendon expressly references a "joint defense agreement" in the closing paragraph of the memo (page 7):  "Also, please fee free to provide copies of this summary to the other attorneys involved in this matter pursuant to our joint defense agreement." *See* Bagger Affidavit, Exhibit F.

(c) On April 7, 1998, Ethan Jacks wrote a letter to Ms. Rendon regarding her representation of Rhonda Walker. That letter bears the caption at the top, in all capital letters, "Joint Defense Document, Attorney - Client Privilege." *See* Fleischer Supp. Affidavit, Exhibit S.

(d) Ms. Rendon again acknowledges the existence of a joint defense agreement in her November 3, 1998 letter to Michael Tuteur regarding Christopher Nagel and the MMT securities class action litigation. *See* Bagger Affidavit, Exhibit G. This letter demonstrates that the joint defense agreement may well have extended beyond the Federal Investigations to the MMT Litigation.

7. The matters asserted in paragraph 7 of the Statement are not disputed.

8. To the extent that EBG asserts in paragraph 8 of the Statement that it was not representing Christopher Nagel in connection with any matters as of November, 1998, when it began representing ATG in connection with ATG's bid and acquisition of assets from MMT, there is an issue of fact in dispute. There is nothing in the record to indicate the precise dates that EBG's representation of Christopher Nagel started and stopped. Certainly, as of November 3, 1998, EBG was becoming involved in representing Christopher Nagel in connection with the MMT Litigation. *See* letter dated November 3,1998 from Carole Schwartz Rendon to Michael Tuteur (EBG), regarding Christopher Nagel and the MMT securities litigation (Bagger Affidavit, Exhibit G). *See also* facsimile dated November 19, 1998 from Carole Schwartz Rendon to Michael Tuteur (Bagger Affidavit, Exhibit H). Furthermore, an internal conflicts investigation

report produced by EBG in discovery in this case evidenced that EBG opened a representation matter for Christopher Nagel on October 13, 1998.[3]

EBG's representation of ATG began as early as November 5, 1998. *See* letter dated November 5, 1998 from David W. Babner (of Riemer & Braunstein) to William Hewitt c/o Glenn D. Burlingame, Esq. (EBG) (*see* Fleisher Supp. Affidavit, Exhibit T). Thus, to the extent EBG asserts otherwise, the documents in this case create an issue of fact as to whether EBG, at the time it began to represent ATG, was also representing MMT and/or Christopher Nagel.

9. To the extent that EBG asserts in paragraph 9 of the Statement that it was not representing Christopher Nagel prior to December 1, 1998, or at the time it began to represent ATG in connection with ATG' bid and acquisition of assets from MMT, there is an issue of fact in dispute. *See* discussion in response to paragraph 8 of the Statement, above.

10. The matters asserted in paragraph 10 of the Statement are not disputed.

11. To the extent EBG asserts in paragraph 11 of the Statement that ATG was aware of allegations regarding the honesty or credibility of MMT officers and directors, including Christopher Nagel, and of allegations regarding serious problems with MMT's technologies, including the allegations made in the Federal Investigations, in the McConchie Letter, and in the MMT Litigation, there are disputed issues of fact. There is simply no indication in Mr. Hewitt's affidavit that EBG made any disclosure to ATG regarding the specific allegations and issues raised in the Federal Investigations of MMT, the McConchie Letter and in the MMT Litigation, concerning the honesty or

---

[3] As indicated in footnote two, above, the document evidencing Christopher Nagel's retention of EBG in October of 1998 (EBG 3796) was produced by EBG under designation "Confidential" and, therefore, must be filed under seal.

credibility of MMT officers and directors, including Christopher Nagel, and concerning serious problems with MMT's CEP/Q-CEP technologies. Moreover, to the extent that EBG alleges that full disclosure by EBG to ATG would not have altered the outcome of ATG's risk/benefit analysis concerning the purchase of assets from MMT, there is an issue of fact in dispute. EBG can point to no competent evidence on this subject, which may well require the introduction of expert testimony at trial.[4]

Furthermore, to the extent that EBG asserts that the MMT Trustee would not have been willing to sell just the so-called Wet Waste assets to ATG, without the CEP/Q-CEP assets, is also an issue of fact in dispute.

12.   To the extent that EBG asserts in paragraph 12 of the Statement that ATG's assessment of the risks associated with the acquisition of assets from MMT, including the CEP/Q-CEP assets, and the outcome of ATG's risk/benefit analysis, would not have been materially altered had EBG made the required disclosures to ATG, there is an issue of fact in dispute. Mr. Hewitt's memorandum concerning the risk assessment (attached as Exhibit A to his affidavit), clearly states a number of assumptions regarding the CEP/Q-CEP assets, which turned out to be entirely off the mark, as evidenced by the fact that ATG abandoned operation of the CEP/Q-CEP business during the fourth quarter of 2000. *See* ATG 10-K Report for 2000 (Fleischer Affidavit, Exhibit H.).

13.   To the extent that EBG asserts, in paragraph 13 of the Statement, that ATG's risk/benefit analysis concerning CEP/Q-CEP assets would not have had a different outcome had EBG made proper disclosure, there is a disputed issue of fact.

---

[4] Expert discovery has been reserved for the second phase of discovery. The second discovery phase will not begin until resolution of EBG's motion for summary judgment.

There is nothing to support EBG's contention that ATG was fully aware of the risks associated with the acquisition of the CEP/Q-CEP assets. Mr. Hewitt's memorandum of November 30, 1998 (Exhibit A to his affidavit) specifically enumerated ATG's assumptions regarding the assets, which turned out to be incorrect. Mr. Hewitt's affidavit does not indicate how ATG's risk/benefit analysis would have come out had its assumptions been different. It remains an issue of fact as to how ATG's assumptions would have changed had EBG made the required disclosures to ATG.

Furthermore, to the extent that EBG asserts that the purchase of the CEP/Q-CEP assets was necessary to facilitate ATG's purchase of the Wet Waste business assets from MMT, there is an issue of fact in dispute. Mr. Hewitt specifically indicates that the operations could be transferred to other ATG facilities if necessary. There is nothing in Mr. Hewitt's affidavit, or anywhere else in the record, which can lead the Court to conclude, on summary judgment, that ATG's interest in acquiring the Wet Waste assets was so high that ATG would have done so regardless of the true financial risks associated with acquisition of the CEP/Q-CEP assets.

14. The matters asserted in paragraph 14 of the Statement are not disputed.

15. The matters asserted in paragraph 15 of the Statement are not disputed.

Dated:  Norwalk, Connecticut
         July 18, 2006

                            THE PLAINTIFFS,
                            By their attorneys,
                            JACOBS PARTNERS LLC

                            By: /s/ Robert M. Fleischer_____
                                Mark R. Jacobs
                                Leslie L. Lane
                                Robert M. Fleischer

        Merritt View
        383 Main Avenue
        Norwalk, Connecticut 06851
        Phone: (203) 846-6622
        Fax: (203) 846-6621

-14-

-15-

**Certification of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 18th day of July, 2006.

By: /s/ Robert M. Fleischer
Robert M. Fleischer