UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
ROBERT J. HANFLING,             )
  Chapter 7 Trustee of the Bankruptcy )
  Estates of ATG, Inc. and ATG  )
  Catalytics, LLC,              )
                                )
       Plaintiff,               )
                                )
       v.                       )   Civil Action No. 05-10077-RGS
                                )
EPSTEIN BECKER & GREEN, P.C.,   )
                                )
       Defendant.               )
_____)
```

**OPPOSITION TO MOTION FOR RECONSIDERATION OF SUMMARY
JUDGMENT ENTERED IN FAVOR OF EPSTEIN, BECKER & GREEN, P.C.**

Defendant Epstein Becker & Green, P.C. ("EBG") opposes the motion of plaintiff Robert I. Hanfling, Chapter 7 Trustee of the bankruptcy estates of ATG, Inc. and ATG Catalytics, LLC (the "Trustee"), for reconsideration of the summary judgment entered in EBG's favor.

The Trustee has asked, pursuant to Fed. R. Civ. P. 59(e), that the Court alter or amend the final judgment entered in this action on November 27, 2006 by reconsidering its grant of summary judgment. The Court awarded EBG summary judgment because the Trustee had not met its burden of proving causation, and the Trustee advances two reasons why the Court should reconsider this ruling. First, the Trustee argues that the Court erred as a matter of law when it placed the burden of proving causation on the Trustee and not on EBG. Second, the Trustee urges that the Court allow the Trustee once again to amend its claim against EBG to assert a new cause of action, for breach of fiduciary duty, and to seek new relief, disgorgement of the legal fees paid to EBG.

The Trustee's motion for reconsideration should be denied. The Trustee's argument that the burden of proof shifts to EBG to disprove causation was briefed below, considered by the Court, and – correctly -- rejected. Nor should the Court follow the Trustee's suggestion that he be given another chance to assert a claim against EBG. "[O]nce the ball has ended, the district court has substantial discretion in deciding whether to strike up the band again in order to allow the losing party to argue new material or a new theory." *Appeal of Sun Pipe Line Co.*, 831 F.2d 22, 25 (1st Cir. 1987). Moreover, providing plaintiffs yet another opportunity to assert a new claim would be futile, as the new claim also fails under governing Massachusetts law.

## PROCEDURAL BACKGROUND

The Trustee brought this action as an adversary proceeding in the ATG, Inc. ("ATG") bankruptcy in the Northern District of California in December 2003. The original complaint included one count directed at EBG,[1] denominated, "Negligence and Breach of Contract (Legal Malpractice)," which alleged that EBG had failed to disclose to its client ATG information material to its decision to purchase certain assets from the bankruptcy estate of MMT Technology, Inc. ("MMT"). The United States District Court for the Northern District of California withdrew the reference and transferred this case to this District in November 2004, where phased discovery proceedings commenced in mid-2005. After the first phase of discovery ended, in June 2006, EBG moved for summary judgment, arguing (1) that it had no duty to disclose the information that the Trustee alleged it ought to have disclosed and (2) that there was in any event no evidence that any failure to disclose had caused ATG any damage.

---

[1] The original Complaint also included claims against EBG's three co-defendants, all of whom have been dismissed from this action.

While the summary judgment motion was pending, the Trustee filed a motion to amend his Complaint. The proposed Amended Complaint was also in one count only. The single count, directed at EBG, was again denominated "Negligence and Breach of Contract (Legal Malpractice)," and claimed that EBG had violated the ethical rules governing attorneys' conflicts of interest. Having already moved for summary judgment, EBG addressed the new allegations in a reply brief submitted in support of its original motion for summary judgment. EBG argued in response to the proposed Amended Complaint (1) that it had not violated any ethical rules against undisclosed conflicts of interest and (2) that the Trustee had done nothing to cure the fundamental lack of causation that flawed his original claim against EBG.

The Court allowed the motion to amend the complaint on November 14, 2006 and, on November 21, 2006, entered summary judgment for EBG on the Trustee's Amended Complaint, ruling that the Trustee had not met his burden of proof on causation of damages.

> The newly amended complaint alleges that ATG's damages resulted from the failure of EBG to disclose a conflict of interest arising from prior representation of employees of MMT. The record before the Court on summary judgment, however, fails to establish a factual basis for causation. . . . As the record now stands, there is nothing more than bare conjecture and speculation to suggest what ATG might have done had the conflict of interest been disclosed prior to the asset purchase. Consequently, EBG's motion for summary judgment is ALLOWED.

Memorandum and Order on Motion for Summary Judgment (11/21/06). Final judgment entered on November 27, 2006, and on December 1, 2006, the Trustee filed a motion under Rule 59(e) asking the Court to reconsider its grant of summary judgment. Because the Trustee (1) has not pointed to any error in the Court's November 21, 2006 Memorandum and Order, (2) has not provided any good reason why he should be given another chance to pursue EBG; and (3) cannot in any event prevail on his newest legal theory, the Trustee's motion for reconsideration should be denied.

**ARGUMENT**

I. **THE COURT CORRECTLY PLACED THE BURDEN OF PROOF ON THE TRUSTEE.**

The Trustee's first argument for alteration or amendment of the judgment in this matter is that the Court did not consider or address his argument that the burden of proof in this action should be on EBG to prove that its conduct did *not* cause any damages,[2] rather than on the Trustee, to prove that EBG's conduct caused ATG to suffer damages. It is not clear why the Trustee thinks the Court did not consider this issue, insofar as the sole subject of discussion at oral argument was causation and whether or not the Trustee had carried his burden and the burden of proof had been briefed by both parties (*see* Pl. Opp. at 16; EBG Reply at 3). Furthermore, the Trustee did not express any disagreement at oral argument with the Court's stated intention to place the burden of proof on the Trustee.

There is no question that the Court in fact properly allocated the burden of proof as to causation to the Trustee. The Trustee asserts that the burden of proof ought to have shifted to EBG because EBG, as ATG's attorney, was a fiduciary. But Massachusetts law is clear and settled that when a client sues his attorney for malpractice -- whether that malpractice action is pleaded as negligence or as a breach of fiduciary duty -- the burden of proof remains with the client. *McEvoy v. Robinson & Cole LLP*, 61 Mass. App. Ct. 1110, 2004 WL 1292042 (2004); *see also Clark v. Rowe*, 428 Mass. 339, 345 (1998); 2 J. MALLEN & J. SMITH, LEGAL MALPRACTICE § 14.2.

In actions against fiduciaries (whether attorneys or officers, directors, or executors), the burden of proof will shift to the fiduciary to justify its actions when it engages in self-interested transactions. Accordingly, the one case relied upon by the Trustee that involved a claim against an

---

[2] Although the Trustee is mistaken about the allocation of the burden of proof, it bears noting that EBG was in fact the only party to offer evidence on the causation issue. *See* Affidavit of William Hewitt ¶¶ 12-15.

attorney, *Cleary v. Cleary*, 427 Mass. 286, 293 (1998), involved an attorney who assisted an invalid aunt to designate him the beneficiary of her annuity contracts and stands for the proposition that the burden of proof shifts to an attorney as fiduciary to justify his actions when he engages in a self-dealing transaction with a client.[3] That case involves a fundamentally different claim than this case, and the Court's allocation of the burden of proof to the Trustee here provides no reason to alter or amend the judgment that entered in this matter.

## II.   THE COURT SHOULD NOT ALLOW THE TRUSTEE TO CHANGE HIS THEORY OF THE CASE YET AGAIN.

Less than three weeks after the Court allowed a motion to amend the Trustee's Complaint in this matter, the Trustee has, in essence, requested a second opportunity to amend, cloaking his request in the form of a motion to alter or amend a judgment. The Trustee's first two complaints alleged that EBG was liable for "negligence" and "breach of contract" and sought as damages money that the Trustee claimed ATG had lost as a result of – in the original Complaint – EBG's failure to disclose certain material information and – in the Amended Complaint – EBG's violation of ethical rules concerning conflicts of interest. Because the summary judgment record is devoid of evidence that anything EBG did caused the harm for which ATG sought to recover, the Court entered summary judgment.

Now, the Trustee seeks to argue that EBG's alleged violations of the ethical rules constituted a breach of fiduciary duty, allegedly entitling the bankruptcy estate to disgorgement of the fees ATG paid EBG in connection with the MMT asset acquisition. The Court should not allow the Trustee to change his theory at this late date. The Trustee has not provided any reason, analogous to

---

[3]   The other case cited by the Trustee, *Rempelakis v. Russell*, 65 Mass. App. Ct. 557 (2006), addressed the actions of an executor, not an attorney. The result was the same, however. The Court ruled that the burden of proving undue influence on a testator shifts if a fiduciary has both taken part in and benefited form the challenged transaction. *Id*. at 563.

"excusable neglect," *cf.* Fed. R. Civ. P. 15(a), why he could not have asserted this new claim earlier. The Trustee learned the facts that cause him to believe that EBG violated the ethical rules in discovery that took place during the first half of 2006.

In any event, this new claim will fare no better than the first two. Governing Massachusetts law does not recognize a remedy of disgorgement of legal fees, without any evidence of causation of damages, in an attorney malpractice action such as this one. The Trustee claims that "[t]he case law is clear that where counsel undertakes a representation that creates a conflict of interest, and counsel fails to adequately disclose such conflict, the proper remedy is disgorgement of fees," Motion to Reconsider, at 3, but none of the three cases he cites for this proposition have anything to do with this proposition.[4] In fact, Massachusetts courts have explicitly declined to adopt such a rule, holding that an attorney's breach of duty – even though a violation of the ethical rules – is not actionable unless it proximately causes injury to the client.

*McElroy v. Robinson & Cole, LLP*, 61 Mass. App. Ct. 1110, 2004 WL 1292042 (2004)[5], involved a claim that defendant law firm had committed legal malpractice and breached fiduciary duties owed its former client owing to a conflict of interest. The Appeals Court first affirmed the trial court's entry of summary judgment in favor of the defendant law firm on the legal malpractice and breach of fiduciary duty claims, on the ground that breach of fiduciary duty, like negligence, requires proof of causation, and the plaintiff had offered none. 2004 WL 1292042, *3; accord *Van Brode Group, Inc. v. Bowditch & Dewey*, 36 Mass. App. Ct. 509, 517 (1994)("It is fundamental that

---

[4] *Fidelity Management & Research Co. v. Ostrander*, 1993 WL 818684 (Mass. Super. Ct. Dec. 9, 1993), did not involve attorneys but rather a faithless employee – a Fidelity portfolio manager who accepted payment from a seller in connection with her purchase of securities on behalf of her fund. *Rome v. Braunstein*, 19 F.3d 54 (1st Cir. 1994), and *Belanzon v. Thomas*, 2003 WL 1233047 (Bankr. D. N.H. 2003), both involved violations of 11 U.S.C. §327, which requires professionals retained by a bankruptcy estate to make certain disclosures when applying for appointment and which authorizes disgorgement of fees as a remedy for a failure to make required disclosures.

[5] A photocopy of the Appeals Court's decision in *McElroy* is appended hereto as Exhibit A.

a tort action cannot be sustained without proof of damages, whether the action is framed as legal malpractice . . . or breach of fiduciary duty"); *Clark v. Rowe*, 428 Mass. 339, 345 (1998)(same). The Appeals Court then addressed McElroy's claim that he need not prove causation if he sought disgorgement of legal fees as a remedy for breach of fiduciary duty:

> McElroy also argues that, even without evidence of causation, a jury should have been allowed to determine whether [defendant's] breach of fiduciary duty required disgorgement of all legal fees owed to the offending law firm. We disagree. McElroy points to no Massachusetts case that provides for per se forfeiture of fees from an attorney in such circumstances, nor are we aware of any.

*McElroy*, 2004 WL 129042, *3. *See also McCann v. Davis, Malm & D'Agostine, P.C.*, 423 Mass. 558, 559-60 (1996)(no cause of action for dual representation, in violation of disciplinary rule, where no harm was caused); *Fiduciary Trust Co. v. Bingham, Dana & Gould*, 58 Mass. App. Ct. 245, 252 (2003)(same).

Under Massachusetts law, ethical violations that do not result in damage to a client are matters for the Board of Bar Overseers and not recovery in tort. Even if EBG had violated the ethical rules concerning conflicts of interest,[6] there is no cause of action available to the Trustee in the absence of damages.

---

6   There has been no finding by the Court of a conflict of interest. Should the Court decide to entertain the Trustee's new claim on the merits, EBG believes that oral argument on the conflicts issue would be helpful to the Court. Because the case was resolved on the causation issue, EBG did not have the opportunity to address the breaches of duty alleged by the Trustee at the summary judgment argument on November 21, 2006. The facts of the case are complex, and EBG was forced to argue the conflict of interest allegations in a reply brief based on a record initially developed with other allegations in view, given plaintiffs' late assertion of new theories.

## CONCLUSION

For all of the foregoing reasons, Epstein, Becker & Green, P.C. requests that the Trustee's Motion for Reconsideration be denied.

                                      EPSTEIN BECKER & GREEN, P.C.

                                      ___/s/ Paula M. Bagger_____
                                      Marjorie Sommer Cooke (BBO # 097800)
                                      Paula M. Bagger (BBO # 547703)
                                      COOKE, CLANCY & GRUENTHAL, LLP
                                      265 Franklin Street
                                      Boston, MA  02110
                                      (617) 428-6800

Dated:  December 12, 2006

## CERTIFICATE OF SERVICE

I, Paula M. Bagger, hereby certify that I have this 12th day of December 2006, served a true copy of the foregoing upon counsel for the plaintiff through the Court's CM/ECF system.

                                      _____/s/ Paula M. Bagger_____
                                        Paula M. Bagger

809 N.E.2d 1100                                                                                                                    Page 1
61 Mass.App.Ct. 1110, 809 N.E.2d 1100, 2004 WL 1292042 (Mass.App.Ct.)
**(Cite as: 61 Mass.App.Ct. 1110, 809 N.E.2d 1100)**

Briefs and Other Related Documents

McElroy v. Robinson & Cole LLP-Mass.App.Ct.,2004.NOTICE: THIS IS AN UNPUBLISHED OPINION.

Appeals Court of Massachusetts.
David L. MCELROY,
v.
ROBINSON & COLE LLP.
**No. 03-P-273.**

June 10, 2004.

*MEMORANDUM AND ORDER PURSUANT TO RULE 1:28*

*1 David McElroy appeals from the entry of summary judgment on his complaint alleging legal malpractice, violation of G.L. c. 93A, intentional misrepresentation, and breach of fiduciary duty on the part of Robinson & Cole LLP (R & C). In a thoughtful memorandum of decision, a Superior Court judge determined that McElroy had no reasonable expectation of proving causation, an element essential to all his claims, and pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), she entered partial summary judgment for R & C. FN1 We agree that causation is lacking and affirm the partial summary judgment on that basis.FN2

   FN1. Robinson & Cole LLP's counterclaims have not yet been adjudicated.

   FN2. Although R & C invites us to decide this appeal on the basis of a technical misstep by McElroy in filing his notice of appeal, we choose to determine the matter on the substantive issues, particularly since the parties have fully briefed the issues. See *Care & Protection Summons,* 437 Mass. 224, 231 n. 14 (2002), quoting from *Swampscott Educ. Assn. v. Swampscott,* 391 Mass. 864, 865-866 (1984) ("[A] decision on the merits should not be avoided on the technicality that a premature notice of appeal was or may have been filed, where no other party has been prejudiced by that

fact"). See also *Morgan v. Evans,* 39 Mass.App.Ct. 465, 467 n. 4 (1995).

*Background.* McElroy retained R & C to defend him in a civil action brought in the United States District Court of Northern Illinois by two union pension funds (the "Chicago litigation"). In defense to the Chicago litigation, attorneys from R & C's Connecticut office filed a motion to reopen a prior bankruptcy action in Connecticut in which McElroy received a release as part of a reorganization plan. The strategy was to have the Bankruptcy Court enjoin the Chicago litigation by enforcing the release and thereby relieve McElroy of all liability in the Chicago litigation.

R & C also advised McElroy to consider seeking indemnification from a third party, 155 Temple St. LLP. McElroy initially resisted this suggestion because David Cordish, a good friend to whom he was indebted, was a partner in that entity. It was discovered some time later that Cordish was no longer the principal of 155 Temple St. LLP, having transferred a ninety-nine per cent interest to Omni Hotels (Omni), one of R & C's clients.FN3

   FN3. The parties dispute the date when R & C became aware, or should have become aware, of a conflict of interest due to its representation of Omni. Because we conclude that McElroy's action founders on causation, resolution of this issue is immaterial to our decision.

R & C's failure to discover, and then to disclose, this conflict of interest, as well as R & C's handling of the Connecticut bankruptcy motion and a possible indemnification action, form the basis for McElroy's claims. Although the Chicago litigation was ultimately resolved in McElroy's favor (R.A. 324), he asserts that he suffered harm in the form of legal fees and costs paid to successor counsel that were necessitated by R & C's conflict of interest, which prolonged the Chicago litigation and made its favorable resolution more expensive.FN4 (R.A. 10, 12, 16, 554-574) McElroy asserts that R & C billed him for over sixteen thousand dollars in claimed legal fees

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and costs and that he paid successor counsel some thirty-six thousand dollars in legal fees. He seeks to recoup all expenses-those paid to successor counsel, as well as those owing to R & C.[FN5]

> [FN4.] Within two months of hiring new counsel, and without obtaining an injunction from the Bankruptcy Court, McElroy was voluntarily dismissed, without prejudice, from the Chicago litigation.

> [FN5.] In its answer, R & C asserted counter-claims for breach of contract and quantum meruit to recover outstanding fees from McElroy. (R.A. 17-24) Neither counterclaim is before us.

*Discussion.* Preliminarily, we need not decide whether the judge erred by applying the law of Connecticut because we conclude that proximate cause, which is absent here, is a necessary element under both Connecticut and Massachusetts law.[FN6] For purposes of discussion, we apply Massachusetts law, as suggested by McElroy.

> [FN6.] Nor does the case turn on any unfamiliarity of McElroy's expert with the standard of practice in Connecticut.

Similarly, we assume, without deciding, the existence of a conflict of interest proscribed by the pertinent Massachusetts ethical rules governing the conduct of the legal profession. As discussed below, evidence of a violation of such rules, without more, is insufficient to establish any of McElroy's claims. Consequently, certain alleged disputed facts-such as whether R & C took insufficient steps to avoid or to remedy the conflict, and whether R & C wrongfully chose to keep it hidden from the plaintiff-are immaterial to our determination.

**\*2** 1. *Legal malpractice claim (Count I).* McElroy asserts that he was "prevent[ed] ... from enjoying the fruits of the contract" with R & C (R.A. 13-14; see 10, 334-335, 555, 573-574) because R & C's negligence in discerning and continuing to operate under a conflict of interest caused him harm. Under any view of McElroy's complaint, the harm alleged consists of unnecessary legal expenses in defending against, and resolving, the Chicago litigation. As such, McElroy must prove that R & C's negligence proximately caused him a loss, here the legal expenses that he would not have otherwise incurred. *Fishman v. Brooks,* 396 Mass. 643, 646-647 (1986). See *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.,* 25 Mass.App.Ct. 107, 111 (1987); *Shimer v. Foley, Hoag & Eliot LLP,* 59 Mass.App.Ct. 302, 308-309 (2003) (legal malpractice plaintiff must demonstrate probability he would have reached *a more favorable outcome* had the defendant law firm exercised adequate skill and care). Proximate cause is an essential element of McElroy's legal malpractice claim, and proof of this element may not rest on mere speculation. *Fiduciary Trust Co. v. Bingham, Dana & Gould,* 58 Mass.App.Ct. 245, 252 (2003).[FN7]

> [FN7.] For essentially the reasons set forth in R & C's brief at 33-36, McElroy's argument that R & C has the burden of proving causation is without merit. We decline McElroy's invitation to extend the holding in *Glidden v. Terranova,* 12 Mass.App.Ct. 597, 598 (1981), to these circumstances. Unlike the client in *Glidden,* McElroy (1) had the burden of proof in the related United Sates bankruptcy action, which he claims R & C wrongfully abandoned; (2) prevailed in the underlying matter, which ultimately rendered the bankruptcy action moot; and (3) seeks no damages other than his legal expenses. The inequities presented in *Glidden* that called for a shifting of the burden of proof to the defendant law firm do not exist here.

"In some circumstances, expert testimony is necessary to prove the element of causation in a legal malpractice claim." *Atlas Tack Corp. v. Donabed,* 47 Mass.App.Ct. 221, 226 (1999), citing *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C., supra* at 115, and *DiPiero v. Goodman,* 14 Mass.App.Ct. 929, 929-930 (1982), cert. denied, 460 U.S. 1029 (1983). Such is the case here.

Viewing the undisputed material facts and reasonable inferences most favorably to McElroy, *Coveney v. President & Trustees of the College of the Holy*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Cross,* 388 Mass. 16, 17 (1983), we conclude that, where the underlying dispute for which McElroy retained R & C was resolved favorably, without adverse judgment or settlement payment, an essential element of McElroy's claim was unlikely to be forthcoming at trial. See *Kourouvacilis v. General Motors Corp.,* 410 Mass. 706, 716 (1991). The record is barren of competent proof that R & C's negligence caused McElroy harm in the form of greater legal expense to resolve the matter than he would otherwise have incurred. Specifically, McElroy failed to demonstrate by expert opinion, rather than speculation, that R & C's alleged conflict of interest was the proximate cause of any such harm. See *Atlas Tack Corp. v. Donabed, supra* at 226. See also *McCann v. Davis, Malm & D'Agostine,* 423 Mass. 558, 559-560 (1996). As the judge below noted, nothing in the record suggests that R & C's misconduct necessitated McElroy incurring otherwise unnecessary charges by successor counsel or that "but for" the asserted conflict R & C would have obtained a favorable result in the Chicago litigation at less cost. Nor does the record support the view that different (and unconflicted) counsel would have brought suit against Omni or asserted a third-party claim against Omni and that such action would have brought about an earlier end to the Chicago litigation at lower overall cost.

**\*3** Notwithstanding the asserted ethical violation by R & C, which may be some evidence of negligence, *Fishman v. Brooks,* 396 Mass. 643, 649 (1986), nothing in the summary judgment record demonstrates that R & C's conduct or legal advice to McElroy either caused delay in resolving the Chicago litigation or, more importantly, required payment by McElroy of additional or otherwise unnecessary legal fees. Contrast *Shimer v. Foley, Hoag & Eliot LLP,* 59 Mass.App.Ct. 302 (2003) (judge erred in entering summary judgment in favor of law firm where the client was prepared to demonstrate, by legal fees and costs paid in *unsuccessful* underlying declaratory judgment action, that counsel's omission caused client to engage in fruitless litigation).

Even assuming, as McElroy alleges, that R & C negligently ignored his instructions and "abandoned" the motion to reopen the Connecticut bankruptcy action, expert testimony would be required to determine whether such conduct was adverse to McElroy's legal interests in the Chicago litigation, and, further, whether McElroy "lost a probability of success as a result of [R & C's] negligence." *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.,* 25 Mass.App.Ct. at 113. Similarly, expert testimony would be necessary to determine that McElroy would likely have prevailed in any third-party action against Omni and that the costs would justify that course of action above others. See *id.* at 111-114. See also *DiPiero v. Goodman,* 14 Mass.App.Ct. at 929-930. The expert testimony propounded by McElroy in response to R & C's motion for summary judgment addressed none of these causation issues. McElroy's expert provided no opinion, grounded in fact, as to any nexus between R & C's alleged ethical violations and McElroy's alleged damages.[FN8] Having failed to demonstrate that such proof was forthcoming, McElroy could not properly withstand R & C's motion for summary judgment. See *Kourouvacilis v. General Motors Corp.,* 410 Mass. at 716.

> FN8. The only reference to causation in the expert's twenty-one page affidavit is a bald statement that McElroy suffered "financial harm" in the form of "legal fees ... incurred as a result of the improper representation." (A.573) Such an untethered assertion is insufficient.

We see no merit to the argument (see McElroy's letter dated March 10, 2004, filed pursuant to Mass.R.A.P. 22, as amended, 418 Mass. 1601 [1994] ) that evidence of R & C's own advice to McElroy satisfies the requirement of a properly qualified expert. See *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.,* 25 Mass.App.Ct. at 114-116.

2. *Breach of fiduciary duty (Count IV).* McElroy also argues that, even without evidence of causation, a jury should have been allowed to determine whether R & C's breach of fiduciary duty required disgorgement of all legal fees owed to the offending law firm. We disagree. McElroy points to no Massachusetts case that provides for per se forfeiture of fees from an attorney in such circumstances; nor are we aware of any.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-10077-RGS    Document 78-2    Filed 12/12/2006    Page 4 of 4

809 N.E.2d 1100
61 Mass.App.Ct. 1110, 809 N.E.2d 1100, 2004 WL 1292042 (Mass.App.Ct.)
**(Cite as: 61 Mass.App.Ct. 1110, 809 N.E.2d 1100)**

Page 4

Apart from a claim of legal malpractice, "[b]reaches of [such fiduciary duties as] client confidences, inappropriate conflicts of interest, and the use of advantages arising out of the client-lawyer relationship may be intentional wrongs or may be negligent acts depending on the circumstances." *Clark v. Rowe,* 428 Mass. 339, 345 (1998). A lawyer may be civilly liable to the client "[i]f a breach of one of these fiduciary duties is a substantial cause of injury to the client." *Ibid.* As discussed previously, McElroy demonstrated no reasonable likelihood of proving a loss as a consequence of having placed his trust in R & C's judgment and legal advice. The judge properly entered summary judgment on this count of the complaint. See *Van Brode Group, Inc. v. Bowditch & Dewey,* 36 Mass.App.Ct. 509, 517 (1994) (whether framed as legal malpractice or breach of fiduciary duty, "tort action cannot be sustained without proof of damages"). Cf. *McCann v. Davis, Malm & D'Agostine,* 423 Mass. 558 (1996); *Fiduciary Trust Co. v. Bingham, Dana & Gould,* 58 Mass.App.Ct. at 252-253.FN9

> FN9. On the materials submitted, the judge could properly have viewed the fiduciary count as duplicative of McElroy's claim for legal malpractice. See, e.g., *Van Brode Group v. Bowditch & Dewey,* 36 Mass.App.Ct. at 517 n. 10. Both counts arise out of the same alleged conflict of interest on the part of R & C, and both allege the same damages as a result of that conflict.

**\*4** 3. *Claims under G.L. c. 93A (Count II) and for intentional misrepresentation (Count III).* For substantially the same reasons, we agree with the motion judge that the failure to demonstrate causation or detrimental reliance also strips McElroy of any reasonable expectation of proving his claims asserting a violation of G.L. c. 93A and intentional misrepresentation.

*Judgment entered on September 20, 2002, affirmed.*

Mass.App.Ct.,2004.
McElroy v. Robinson & Cole LLP
61 Mass.App.Ct. 1110, 809 N.E.2d 1100, 2004 WL 1292042 (Mass.App.Ct.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 23941146 (Appellate Brief) Reply Brief for Appellant (Jul. 11, 2003) Original Image of this Document (PDF)
• 2003 WL 23941145 (Appellate Brief) Brief of the Defendant-Appellee, Robinson & Cole, LLP (Jun. 27, 2003) Original Image of this Document (PDF)
• 2003 WL 23941001 (Appellate Brief) Brief for Appellant (May. 08, 2003) Original Image of this Document with Appendix (PDF)
• 2003-P-0273 (Docket) (Feb. 26, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.